UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL DWAYNE VIRDELL, JR., | No. 2:26-cv-02147-DAD-DMC (PS) |
| Plaintiff, | |
| v. | ORDER DENYING PLAINTIFF'S *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER |
| CITY OF ETNA, et al., | |
| Defendants. | (Doc. No. 3) |

This matter is before the court on the *pro se* plaintiff's *ex parte* motion for temporary restraining order.  (Doc. No. 3.)  For the reasons explained below, plaintiff's motion for a temporary restraining order will be denied.

**BACKGROUND**

On June 12, 2026, plaintiff filed a complaint against defendants City of Etna and Josh Short, Chief of Police ("defendants").  (Doc. No. 1.)  That same day, plaintiff filed an *ex parte* motion for temporary restraining order requesting that this court order the release of his 2001 Volkswagen Jetta ("the vehicle") without requiring payment of towing or storage charges, or in the alternative, an order prohibiting the sale, transfer, or disposal of that vehicle.  (Doc. No. 3 at 1.)  In his complaint, plaintiff alleges as follows.

/////

1

On October 17, 2025, plaintiff was driving the vehicle when Etna Police Department Officer Buell began to follow him. (Doc. No. 1 at ¶ 8.) Plaintiff admits that the vehicle was uninsured, displayed only one license plate on the rear bumper, and that he did not possess a valid driver's license at the time. (*Id.*) Officer Buell followed plaintiff for "1.6 miles" to plaintiff's home, where plaintiff parked the vehicle in his driveway. (*Id.* at ¶¶ 8–10.) Plaintiff exited his vehicle, at which time officer Buell pulled behind the vehicle and activated his emergency lights. (*Id.* at ¶ 11.) Officer Buell seized the vehicle and had it towed. (*Id.* at ¶ 13.) Plaintiff challenged the impoundment of his vehicle through "post-storage hearing procedures provided by the City of Etna," although plaintiff alleges that the hearing provided did not comport with the requirements of due process because it was not properly documented and lacked a neutral decision-maker. (*Id.* at ¶¶ 16–17.) Plaintiff also notes that Officer Buell admitted to plaintiff "in small claims court"[1] that Officer Buell was compelled to resign from his position as an officer with the Etna Police Department. (*Id.* at ¶ 18.)

On or about November 3, 2025, a Notice of Intent to Dispose of Vehicle was mailed to plaintiff, and on November 7, 2025, plaintiff signed a request that his vehicle not be disposed of because he wished to contest the matter. (Doc. No. 1-4 at 6.) On November 25, 2025, the Etna Police Department sent plaintiff a letter informing him of the necessary steps for him to follow in order to recover the vehicle and also advising him that he could pursue legal and administrative remedies if available to him. (*Id.* at 11.) On December 19, 2025, the Etna Police Department sent a letter to plaintiff in response to his request for records dated November 17, 2025, in which the Department's custodian of records stated that there were no records indicating that a post-storage hearing was requested or occurred.[2] (*Id.* at 13.)

---

[1] Plaintiff does not allege when this conversation purportedly occurred, why he was present in small claims court with Officer Buell, nor why the city compelled Officer Buell to resign. Plaintiff has also not alleged whether there is a parallel state proceeding relating to the impounding of the vehicle.

[2] In plaintiff's declaration regarding notice, he declares that on October 27, 2025, he called "dispatch" and requested a post-storage hearing, that he was connected to Police Chief Josh Short, and that Chief Josh Short purported to conduct a post-storage hearing about one hour later. (Doc. No. 3 at 9.)

In support of his motion for temporary restraining order, plaintiff has provided a declaration regarding notice provided to defendants of his pending motion in which he states the following.  Plaintiff has not provided written or oral notice of this *ex parte* motion to defendants because he believes immediate and irreparable injury will occur before defendants can be heard in opposition to that motion.  (Doc. No. 3 at 8.)  The impound hold on the vehicle was "released some time ago" but plaintiff is unable to afford the "towing and storage charges."[3]  (*Id.* at 9.)  Plaintiff was told by an unnamed party on an unknown date that if he did not pay the charges, his vehicle will be dismantled or disposed of June 18, 2026.  (*Id.*)

Based on the foregoing, plaintiff brings the following claims against defendants: (1) violation of the Fourth Amendment – unreasonable seizure; (2) violation of the Fourteenth Amendment – procedural due process; (3) violation of the Fourteenth Amendment – substantive due process; (4) *Monell* Liability; (5) conversion; and (6) trespass to chattels.  (*Id.* at ¶¶ 19–43.)

**LEGAL STANDARD**

The standard governing the issuing of a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction.  *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  "The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'"  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see also Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th Cir. 2011) ("After *Winter*, 'plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction.'"); *Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).  A plaintiff seeking a preliminary injunction must make a showing on all four of these prongs.  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127,

---

[3]  The court notes that, in light of plaintiff's statement that the impound hold on his vehicle was "released," it is not clear whether defendants even have the authority to ensure plaintiff's vehicle is released or maintained in its current storage location which is not identified by plaintiff.

3

1135 (9th Cir. 2011). The Ninth Circuit has also held that "[a] preliminary injunction is appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Id.* at 1134–35 (quoting *Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008) (*en banc*)). The party seeking the injunction bears the burden of proving these elements. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009); *see also Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (citation omitted) ("A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief."). Finally, an injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

Relevant to the court's consideration of plaintiffs' pending *ex parte* motion, a court may only issue a temporary restraining order without notice to the adverse party when:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition [and] (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). Moreover, *ex parte* temporary restraining orders "should be restricted to serving their underlying purpose of preserving the *status quo* and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda County*, 415 U.S. 423, 439 (1974).

**ANALYSIS**

As addressed above, a temporary restraining order may be issued without notice to the adverse party or its attorney only under strictly limited circumstances. Fed. R. Civ. P. 65(b)(1); *see also* L.R. 231(a) ("Except in the most *extraordinary of circumstances*, no temporary restraining order shall be granted in the absence of actual notice to the affected party and/or counsel, by telephone or other means, or a sufficient showing of efforts made to provide notice.") (emphasis added). The Supreme Court has emphasized the very limited nature of circumstances under which an *ex parte* temporary restraining order is justified:

4

> The stringent restrictions imposed . . . by Rule 65 on the availability of *ex parte* temporary restraining orders reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute. *Ex parte* temporary restraining orders are no doubt necessary in certain circumstances, but under federal law they should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer.

*Granny Goose Foods, Inc.*, 415 U.S. at 438–39 (internal citation omitted); *McZeal v. EMC Mortg. Corp.*, No. 13-cv-07220-MMM-CW, 2013 WL 12138853, at *1 n.3 (C.D. Cal. Nov. 4, 2013) ("Only in rare circumstances can a federal court issue a TRO without written or oral notice to the adverse party."). "In cases where notice could have been given to the adverse party, courts have recognized 'a very narrow band of cases in which *ex parte* orders are proper because notice to the defendant would render fruitless the further prosecution of the action.'" *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006) (quoting *Am. Can Co. v. Mansukhani*, 742 F.2d 314, 322 (7th Cir. 1984)); *see also Harnden v. Perez*, No. 21-cv-09231-LHK, 2021 WL 7367123, at *3 (N.D. Cal. Dec. 8, 2021).

Local Rule 231(c) also sets out further procedural requirements for the filing of an *ex parte* temporary restraining order. Specifically, Local Rule 231(c) requires that the movant provide the following documents: (1) a complaint; (2) a motion for temporary restraining order; (3) a brief on all relevant legal issues presented by the motion; (4) an affidavit in support of the existence of an irreparable injury; (5) an affidavit detailing the notice or efforts to effect notice to the affected parties or counsel or showing good cause why notice should not be given; (6) a proposed temporary restraining order with a provision for a bond; (7) a proposed order with blanks for fixing the time and date for hearing a motion for preliminary injunction, the date for the filing of responsive papers, the amount of the bond, if any, and the date and hour of issuance; and (8) the proposed order shall further notify the affected party of the right to apply to the court for modification or dissolution on two (2) days' notice or such shorter notice as the court may allow, in the event that the sought temporary restraining order is to be issued *ex parte*. L.R. 231(c).

/////

5

Here, plaintiff has not made any efforts to provide notice to defendants regarding his *ex parte* motion for a temporary restraining order.  (Doc. No. 3 at 8.)  Further, plaintiff has not indicated whether he has properly served his complaint on either of the named defendants, and this court is unable to conclude whether the defendants are aware of this lawsuit at all.  *See Reno Air Racing Ass'n.*, *Inc. v. McCord*, 452 F.3d 1126, 1130–32 (9th Cir. 2006) ("[C]ourts have recognized very few circumstances justifying the issuance of an *ex parte* TRO."); *Silas v. Select Portfolio Servicing, Inc.*, No. 1:17-cv-00012-DAD-JLT, 2017 WL 117889, at *2 (E.D. Cal. Jan. 11, 2017) (denying an *ex parte* application to halt a public sale of property scheduled the following day because the plaintiff did not meet his burden under Rule 65(b)(1) by merely informing defendant of his intent to file an *ex parte* application and faxing a copy of it to defendant's ombudsman).

In addition, the court notes that plaintiff has been aware of the potential that the vehicle may be disposed of since November 7, 2025.  (Doc. No. 1-4 at 6.)  In now moving for emergency relief, plaintiff has not informed the court why he believes his vehicle will be disposed of on June 18, 2026, nor has plaintiff provided the date that he purportedly learned that the vehicle would be disposed of on that date.  It appears that plaintiff has at least been aware of the possible disposal of the vehicle for over six months.  Plaintiff has not carried his burden of showing that the granting of *ex parte* relief absent any attempt on his part to notify defendants of the pending motion is appropriate under these circumstances.  *See Myles v. PennyMac Loan Servs. LLC*, No. 17-cv-04343-PSG-MRW, 2017 WL 8160965 (C.D. Cal. July 26, 2017) ("In order to justify *ex parte* relief, the moving party must establish (1) that its cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed procedures; and (2) that it is without fault in creating the crisis that requires *ex parte* relief, or that the crisis occurred as a result of excusable neglect.") (citing *Mission Power Eng'g Co. v. Continental Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995)); *see also Brewer v. Loancare, LLC*, No. 2:25-cv-01157-DC-CSK (PS), 2025 WL 1400288, at *2 (E.D. Cal. May 14, 2025) (collecting cases denying motions for emergency relief where the plaintiff unreasonably delayed in seeking relief to prevent foreclosure sales).

Finally, plaintiff has not carried his burden to show irreparable harm will result absent the granting of a temporary restraining order.  Plaintiff argues that he is experiencing harm because he is being deprived of the use of his only vehicle, which is exposed to escalating storage charges, and which is at imminent risk of disposal.  (Doc. No. 3 at 4.)  Additionally, plaintiff argues that his vehicle has been seized pursuant to a constitutionally defective process, and that this ongoing violation subjects him to irreparable harm that may not be redressed by money damages.  (*Id.*)

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"  *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)) (finding it was reasonable for the district court to conclude that "the Plaintiffs faced a real possibility" of unlawful detention due to their immigration status which would constitute irreparable harm).  However, the alleged constitutional injuries that plaintiff complains of here, the loss of the use of his car and the allegedly defective post-seizure process, took place over six months ago.  (Doc. No. 3 at 9.)  Plaintiff's six-month delay in seeking relief demonstrates a lack of irreparable harm which weighs heavily against the granting of *ex parte* relief.  *See Denham v. City of Glendale*, No. 26-cv-00265-JFW-KES, 2026 WL 127936, at *2 (C.D. Cal. Jan. 12, 2026) (collecting cases and finding the plaintiff did not carry her burden to show irreparable harm because she delayed four months in seeking relief following the seizure of her vehicle), *reconsideration denied,* No. 26-cv-00265-JFW-KES, 2026 WL 413629 (C.D. Cal. Feb. 9, 2026); *see also Cornejo v. Tumlin*, No. 20-cv-05813-CRB, 2020 WL 4897907, at *3 (N.D. Cal. Aug. 20, 2020) ("Although Cornejo references constitutional deprivations under the Fourth, Fifth, and Fourteenth Amendments, . . . the primary harm that Cornejo complains of is economic: the loss of the car, and expenses relating to replacing the car[.]" (citations omitted)); *cf. Deleon v. Placentia Police Dep't*, No. 23-cv-00331-JGB-SK, 2023 WL 3555487, at *3 (C.D. Cal. Feb. 28, 2023) (finding that irreparable injury had been demonstrated where the plaintiff declared that he might perish in the following week if he was "unable to access, and live out of, his vehicle, which is necessary for shelter and the storage of his medicines[]").

/////

7

Here, plaintiff has not carried his burden to justify the granting of the requested *ex parte* relief in light of the complete lack of notice to defendants and his lengthy delay in bringing the pending emergency motion.  Therefore, the court will deny plaintiff's *ex parte* motion for temporary restraining order.  *See Brooks v. It Works Mktg., Inc.*, No. 1:21-cv-01341-DAD-BAK, 2022 WL 2217253, at *8 (E.D. Cal. June 21, 2022) (determining the plaintiff did not carry her burden to show irreparable harm and denying her motion for preliminary injunction on that basis); *Brewster v. City of Los Angeles*, No. 14-cv-2257-JGB-SP, 2014 WL 12853164, at *3 (C.D. Cal. Nov. 20, 2014) ("As a temporary restraining order is an extraordinary remedy, it should not be granted 'unless the movant, by a clear showing, carries the burden of persuasion.'") (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 872 (1997)).

### CONCLUSION

For the reasons explained above, plaintiff's motion for a temporary restraining order (Doc. No. 3.) is DENIED.  This action is referred to the assigned magistrate judge for further proceedings pursuant to Local Rule 302(c)(21).

IT IS SO ORDERED.

Dated:  **June 16, 2026**

_____
DALE A. DROZD
UNITED STATES DISTRICT JUDGE

8